In re the Marriage of Roger
W. SIREK, petitioner,
Appellant,

v.

Carol M. SIREK, Respondent.

No. A04–1353.

Court of Appeals of Minnesota.

March 29, 2005.

Raphael J. Miller, Gaylord, MN; and
Keith Kerfeld, Kafi Cohn Linville, Tewks-

bury, Kerfeld, Simmer, Minneapolis, MN, for appellant.

Dennis P. Moriarity, Shakopee, MN, for respondent.

Considered and decided by SHUMAKER, Presiding Judge; TOUSSAINT, Chief Judge; and DIETZEN, Judge.

## OPINION

DIETZEN, Judge.

In this dissolution proceeding, appellant challenges the district court's award of marital real property to respondent. The district court found that appellant disposed of marital assets when he did not contest the cancellation of a contract for deed on the property and imputed the value of the property to appellant under Minn.Stat. § 518.58, subd. 1a (2002). Because it was an abuse of discretion for the district court to award the property to respondent based on the marital disposition statute, we reverse and remand.

## FACTS

Appellant Roger Sirek and respondent Carol Sirek married in December 1983 and began farming three parcels of real property consisting of approximately 125 acres (Farmland) in a cooperative relationship with appellant's parents. After appellant's father died, the parties sought to purchase the Farmland from appellant's mother, Arvilla Sirek. On March 20, 1990, Arvilla Sirek as vendor, and appellant and respondent as vendees, entered into a contract for deed. As a result of the contract, appellant and respondent each acquired a contract vendee's interest in the Farmland and Arvilla Sirek retained a life-estate in-terest in the five acres of property where her residence was located. The price on the contract for deed was $141,000. The Farmland was then worth approximately $180,000 but was offered to the parties at a discount because appellant had been un-compensated for his many years of work on the property.

The parties made regular payments of $1,100 per month on the contract until June 1997. By that time, the parties had suffered a downturn in finances along with strains to their marriage. The marriage was so strained that the parties kept dif-ferent work hours and barely communicat-ed with each other. In July 1999, appel-lant drove Arvilla Sirek to an attorney's office so she could determine her options as vendor of the contract for deed. In October 1999, her attorney personally served a mediation notice on appellant at the farm. After the fourteen-day media-tion time expired, the attorney personally served at least one copy of a cancellation notice for the contract for deed on appel-lant at the farm. The cancellation notice was not drafted in accordance with the statutory requirements, but the attorney supplemented the notice by orally notify-ing appellant that he had 60 days to rein-state the contract for deed. Appellant did not communicate to respondent that he had received the mediation and cancella-tion notices but instead placed the docu-ments on the kitchen counter. After a period of days, appellant placed the notices in a cupboard with his bills.

In January 2000, immediately after the time for reinstating the contract for deed expired, the attorney recorded the cancel-lation and the Farmland—now appraised to be worth $374,055—reverted to Arvilla Sirek.[1] After the cancellation, appellant

---

1. The appraisal figure was referenced in the district court's findings of fact in its Decem-ber 2002 order. Findings from the December 2002 order were judicially noticed in the dis-trict court's February 2003 order that divided the parties' property. In its May 2004 order,

continued to farm a portion of the Farmland.

Appellant petitioned to dissolve the marriage in January 2001 (Dissolution litigation). Upon discovering that her interest in the Farmland under the contract for deed had been cancelled, respondent filed suit against appellant and Arvilla Sirek to recover her interest (Farmland litigation). In December 2002, the district court held that respondent's interest in the Farmland was not legally terminated because of the failure to comply with statutory cancellation procedures. The district court granted respondent the right to reinstate the contract for deed by tendering unpaid principal, accrued interest, and property taxes to Arvilla Sirek. No appeal was filed and the decision in the Farmland litigation is final.

Upon conclusion of the Farmland litigation, the district court issued a judgment in the Dissolution litigation that found the Farmland was non-marital property belonging to respondent, subject to Arvilla Sirek's life estate, the contract for deed, and other mortgages. Appellant challenged the judgment and we reversed, concluding that the district court erred in determining that the Farmland was non-marital property and in basing the property division on appellant's marital misconduct. *Sirek v. Sirek*, No. A03–394, 2004 WL 61126 (Minn.App. Jan.13, 2004). We remanded the Dissolution litigation to the district court to divide the marital property without regard to marital misconduct.

In May 2004, the district court issued a supplemental judgment in the Dissolution litigation, again awarding respondent the Farmland subject to Arvilla Sirek's life estate and the contract for deed. The district court imputed the value of the Farmland to appellant, reasoning that appellant had disposed of marital assets when he allowed the cancellation of the contract for deed to proceed without protest. The district court concluded that awarding the parties' marital interests in the Farmland to respondent and imputing its value to appellant was warranted under Minn.Stat. § 518.58, subd. 1a. The practical effect of the district court's order was to award the majority of the marital estate, i.e. the Farmland, to respondent, and then to divide the remainder of the estate "in a fair, reasonable and equitable" manner. Appellant now challenges the district court's supplemental judgment.

## ISSUE

Did the district court abuse its discretion when it awarded all of the parties' interests in the Farmland to respondent under Minn.Stat. § 518.58, subd. 1a?

## ANALYSIS

District courts have broad discretion over the division of marital property and appellate courts will not alter a district court's property division absent a clear abuse of discretion or an erroneous application of the law. *Chamberlain v. Chamberlain*, 615 N.W.2d 405, 412 (Minn.App. 2000), *review denied* (Minn. Oct. 25, 2000); *Ebnet v. Ebnet*, 347 N.W.2d 840, 842 (Minn.App.1984). Appellate courts "will affirm the trial court's division of property if it had an acceptable basis in fact and principle even though [the appellate court] might have taken a different approach." *Antone v. Antone*, 645 N.W.2d 96, 100 (Minn.2002). "We defer to the trial court's findings of fact and will not set them aside unless they are clearly erroneous." *Id.*

which is the order under appeal, the district court attached "full force and effect" to findings in its February 2003 order. Therefore,

the original appraisal figure remains in effect in this proceeding.

The district court "shall make a just and equitable division of the marital property of the parties without regard to marital misconduct, after making findings regarding the division of the property." Minn. Stat. § 518.58, subd. 1 (2002). When dividing marital property, the district court may consider many factors, such as the length of the marriage, sources of income, and the contribution of each party in the preservation of the marital property. *Id.* "It shall be conclusively presumed that each spouse made a substantial contribution to the acquisition of income and property while they were living together as husband and wife." *Id.* The district court must value marital property upon division of the marital estate, and, if there is a substantial change in the value of an asset between the original valuation and the final distribution, "the court may adjust the valuation of that asset as necessary to effect an equitable distribution." *Id.*

If a party to a dissolution proceeding disposes of, transfers, encumbers, or otherwise conceals a portion of the marital estate, "the court shall compensate the other party by placing both parties in the same position that they would have been in had the transfer, encumbrance, concealment, or disposal not occurred." Minn. Stat. § 518.58, subd. 1a. The district court "may impute the entire value of an asset and a fair return on the asset to the party who transferred, encumbered, concealed, or disposed of it." *Id.*

■ Here, the district court applied Minn.Stat. § 518.58, subd. 1a, because it found that appellant disposed of marital assets by not informing respondent or contesting the cancellation of the contract for deed. But that determination is not applicable because the district court in the Farmland litigation determined that respondent's interest in the Farmland had not been legally terminated. Consequent-

ly, the Farmland was part of the marital estate at the time of the Dissolution litigation. Because the Farmland was part of the marital estate, we conclude that Minn. Stat. § 518.58, subd. 1a, the disposition provision, does not apply to the property division.

■ An examination of subdivision 1a supports this result. According to the provision, when a party disposes of marital assets, the other party shall be compensated for that disposition, potentially by imputing assets to the disposing party. *See Carrick v. Carrick,* 560 N.W.2d 407, 413 (Minn.App.1997) (concluding that provision is applicable when spouse spent monies from two certificates of deposit and the parties' joint checking account in Las Vegas). But the statute was not meant to provide a financial windfall to the innocent party. Here, the district court imputed the full value of the Farmland, appraised at $374,055 and constituting the overwhelming majority of the marital estate, to appellant. Imputing the value of the Farmland to appellant and transferring his interest in the contract for deed to respondent results in a financial windfall: She received an equitable division of the remainder of the marital estate and the parties' ownership interests in the Farmland while appellant merely received his share of the reduced size of the marital estate. When a disposed asset returns to the marital estate, it is duplicative to impute the asset's value to the offending party, because imputation is only a remedy to put the parties in the same position they would have been in had the disposition not occurred. The disposition provision of the statute was thus intended to provide a method of accounting that would facilitate a fair and equitable division of the property when an asset was no longer part of the marital estate.

Respondent argues that our conclusion allows parties contemplating a dissolution proceeding to freely dispose of marital property knowing they will suffer no consequence and will subsequently be eligible for an equitable division of the marital estate. But here, we are presented with the unusual situation where the marital property disposed of by one party was returned to the marital estate before the district court equitably divided the property. We simply conclude that when marital property is disposed of prior to or during a dissolution proceeding, but redounds to the marital estate before the division of that estate, Minn.Stat. § 518.58, subd. 1a, does not apply. We note that, under Minn.Stat. § 518.58, subd. 1, district courts have wide discretion to divide marital property; that discretion may still be used to protect "innocent" spouses.

Appellant encourages us to formulate an equitable division of marital property, but "[w]e will not determine in the first instance whether [appellant] should receive any portion of the marital interest in the three parcels." *Sirek*, A03-394, 2004 WL 61126 at * 5. On remand, the district court may consider all of the factors listed in Minn.Stat. § 518.58, subd. 1, including (1) the amount respondent expended—which included more than $44,000 in attorney fees—to bring the Farmland back into the marital estate; (2) the change in value of the contract for deed, which has accrued more than $30,000 in interest since its original cancellation in January 2000; and (3) the change in value of the Farmland between the original appraisal and the final distribution. The district court may not divide the property on the basis of marital misconduct, *see id.,* but it may consider factors such as appellant's contribution to the preservation of the Farmland. *See Stassen v. Stassen,* 351 N.W.2d 20, 24 (Minn.App.1984) (stating that a court may not base property division upon a finding of fault, which "includes a finding that one spouse was a habitual consumer of alcoholic beverages"); *see also* Minn.Stat. § 518.58, subd. 1 ("The court shall also consider the contribution of each [party] in the acquisition, preservation, depreciation or appreciation in the amount or value of the marital property[.]"). Finally, while the district court must make a just and equitable division of the marital property, "[a]n equitable division of marital property is not necessarily an equal division." *Crosby v. Crosby,* 587 N.W.2d 292, 297 (Minn.App. 1998), *review denied* (Minn. Feb. 18, 1999).

## DECISION

Because the disposed marital assets returned to the marital estate during the pendency of the Dissolution litigation, the district court abused its discretion by awarding the assets to respondent pursuant to Minn.Stat. § 518.58, subd. 1a (2002). We therefore reverse and remand for a division of the marital estate pursuant to Minn.Stat. § 518.58, subd. 1 (2002).

**Reversed and remanded.**